```
 1
 2
 3
 4
 5
 6                          UNITED STATES DISTRICT COURT
 7                                DISTRICT OF NEVADA
 8                                       * * *
 9  UNITED STATES OF AMERICA,           )
                                        )
10              Plaintiff,              )      3:07-CR-00080-LRH-RAM
                                        )
11       v.                             )
                                        )      ORDER
12  EYDAN LOPEZ-ROJO,                   )
                                        )
13              Defendant.              )
                                        )
```

15   Presently before the court is Defendant Eydan Lopez-Rojo's Motion to Suppress Evidence
16 (#20[1]). The Government filed an opposition to this motion (#21). On April 7, 2008, this court held
17 an evidentiary hearing on Defendant's motion. Following this hearing the parties submitted
18 supplemental memoranda (#33 & 34). On May 27, 2008, this court held another evidentiary hearing
19 on Defendant's motion.

**I.   Facts and Procedural History**

The following facts were developed at this court's evidentiary hearings:

On September 13, 2007, at approximately 5:00 p.m., Brett Tierney, a highway patrol officer with the Nevada Highway Patrol and a member of the Northern Nevada Interagency Criminal Enforcement Team, was monitoring eastbound traffic on Interstate 80 near Verdi, Nevada. About

---

[1] Refers to the court's docket

this time, Tierney saw Defendant's vehicle approach and observed that Defendant was sitting in such a manner that Tierney could only see Defendant's nose and about a quarter inch of Defendant's face. Tierney thought that this position was unusual, so he pulled out from his position and began to follow Defendant.

When Tierney was about 500 feet away from Defendant's vehicle, he saw it drift over the slow lane's fog line with its right-side tires. The tires went entirely over the fog line onto the shoulder, where they remained for two seconds. Defendant's vehicle then drifted back to the left and drove with its right-side tires on the fog line for another couple seconds. The vehicle eventually moved completely back into the slow lane. At this point, Tierney stopped Defendant based on Tierney's belief that Defendant violated Nevada's prohibition against failing to maintain a single traffic lane, Nevada Revised Statutes section 484.305.

After stopping Defendant's vehicle, Tierney spoke with Defendant, advised him of the reason for the stop, and obtained Defendant's driver's license and registration. While Tierney was running a records check, he contacted Sergeant David Lewis, also an employee of the Nevada Highway Patrol, to assist him with the stop because Tierney was having trouble communicating with Defendant, as Defendant speaks Spanish and Tierney speaks very little Spanish. Tierney testified at this court's first evidentiary hearing that Lewis speaks Spanish better than Tierney does.

Upon Lewis's arrival, Tierney advised him of the reason for the stop, told him to give Defendant a warning, and also asked Lewis to try to obtain Defendant's consent to search his vehicle. After this conversation, Lewis told Defendant that he was receiving a warning, gave Defendant his driving documents, said goodbye, and shook Defendant's hand. As Defendant was walking back to his vehicle, but before he entered the vehicle, Lewis asked Defendant if he had a moment. In response, Defendant walked back to Lewis. Lewis asked Defendant if he had illegal drugs or large amounts of cash in his vehicle. Defendant responded that he did not have any drugs in his vehicle, but he did have about $1000 cash. Lewis then asked Defendant if the officers could

search his vehicle. Defendant nodded and said yes. Defendant also signed a form written in Spanish indicating he was consenting to a vehicle search. After obtaining Defendant's consent, Tierney and Lewis searched Defendant's vehicle and discovered four pounds of methamphetamine.

Defendant's present motion seeks to suppress the methamphetamine on two bases: (1) Tierney lacked reasonable suspicion to stop Defendant's vehicle and (2) Defendant's stop was unreasonably prolonged when Lewis asked him whether he had a moment.

## II. Legal Standard

With regard to Defendant's first argument that he was stopped without reasonable suspicion, the Government must first satisfy a burden of production "by coming forward with 'specific and articulate facts[]' to support [its] suspicion of illegal activity." *United States v. Willis*, 431 F.3d 709, 715 n.5 (9th Cir. 2005) (citation omitted). Defendant then has the burden of showing that evidence should nonetheless be suppressed because officers lacked reasonable suspicion. *See id.*

With respect to Defendant's second argument that he was detained for an unreasonable amount of time, the Government carries the burden to prove its seizure was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure. *Florida v. Royer*, 460 U.S. 491, 500 (1983).

## III. Discussion

### A. Defendant's Initial Seizure

Defendant argues Tierney did not have reasonable suspicion to stop him based on a failure to maintain a single lane of travel in violation of Nevada Revised Statutes section 484.305(1). This subsection of the Nevada Revised Statutes states, "If a highway has two or more clearly marked lanes for traffic traveling in one direction, vehicles must: (a) Be driven as nearly as practicable entirely within a single lane; and (b) Not be moved from that lane until the driver has given the appropriate turn signal and ascertained that such movement can be made with safety." Defendant

contends that "[t]here is no indication that a driver who is being overtaken by a police car violates the statute by pulling over to the edge of his lane and even for a short distance with his passenger side tires over the white line in response to the police action in approaching his vehicle." (Mot. to Suppress Evidence (#20) at 3.) As support for this proposition, Defendant cites three cases: *United States v. Sigmond-Ballesteros*, 285 F.3d 1117 (9th Cir. 2002); *United States v. Robert L.*, 874 F.2d 701 (9th Cir. 1989); and *United States v. Colin*, 314 F.3d 439 (9th Cir. 2002).

### 1. *United States v. Sigmond-Ballesteros*

*United States v. Sigmond-Ballesteros*, 285 F.3d 1117 (9th Cir. 2002) involved a border patrol agent's stop of a defendant's vehicle, leading to the defendant's prosecution for transporting illegal aliens. *Id.* at 1120. Before the stop, the agent was driving behind the defendant and came within an unsafe distance behind him. *Id.* The defendant made a sudden lane change into a slow lane and decreased his speed. *Id.* The agent slowed down and pulled behind the defendant's vehicle. *Id.* As the agent moved behind the defendant's vehicle, however, the defendant pulled off the highway. *Id.*

The Ninth Circuit concluded that the defendant's lane change and movement off the highway, alone and in combination with the defendant's other actions, did not give the agent reasonable suspicion to stop him. *Id.* at 1127. Of note, the court relied in part on its finding that "[t]here is no evidence that Defendant broke any traffic laws in making any lane changes." *Id.* at 1121 n.2.

### 2. *United States v. Robert L.*

In *United States v. Robert L.*, 874 F.2d 701 (9th Cir. 1989), the Ninth Circuit reversed a district court's denial of a defendant's motion to suppress 109 pounds of marijuana. *Id.* at 702, 705. The defendant in *Robert L.* was a juvenile who police first observed as he was driving by an accident scene. *Id.* at 702. An officer observed the defendant leave the accident scene at a somewhat quicker pace than other traffic. *Id.* The officer also saw the defendant glance at him and

4

quickly turn away. *Id.*

Traveling as fast as ninety miles per hour, the officer caught up with the defendant's vehicle, which was traveling in the left lane of a road. *Id.* When the defendant saw the officer approaching, the defendant moved over into the road's right lane. *Id.* The officer testified that this lane change was made in an erratic manner, but the court found there was no evidence the defendant disrupted traffic or broke any traffic regulations. *Id.*

The Ninth Circuit concluded that the defendant's driving, taken alone and in combination with other factors, did not give rise to reasonable suspicion that the defendant was engaged in criminal activity. *Id.* at 704, 705. Significantly, the court stated, "First, we note that no traffic laws were broken; although this is not determinative,[2] it is significant. Second, at least as far as [the defendant's] lane change is concerned, [the defendant's] conduct seems perfectly reasonable given that a marked patrol car was approaching in the lane behind him at 90 miles per hour." *Id.* at 704 (citations omitted).

### 3. *United States v. Colin*

In *United States v. Colin*, 314 F.3d 439 (9th Cir. 2002), the Ninth Circuit reversed a district court's denial of a defendant's motion to suppress methamphetamine and marijuana found in his car. *Id.* at 441, 442. The following facts describe the defendant's actions leading to his stop:

> Sergeant Thomas Carmichael observed a blue Honda traveling at 70 m.p.h. northbound in the right lane on Interstate 15. Carmichael first observed the Honda from his patrol car, which was positioned 75 yards behind it. He observed the car drift onto the solid white fog line on the far side of the right lane and watched the car's wheels travel along the fog line for approximately ten seconds. The Honda then drifted to the left side of the right lane, signaled a lane change, and moved into the left lane. Carmichael next observed the car drift to the left side of the left lane where its left wheels traveled along the solid yellow line for approximately ten seconds. The car then returned to the center of the left

---

[2] The court's note that a broken traffic law would not be determinative of whether an officer could effect a stop is likely a reference to case law before *Whren v. United States*, 517 U.S. 806 (1996). In *Whren*, the Supreme Court held that the constitutional reasonableness of a traffic stop does not depend on the subjective motivation of the officer involved. *Id.* at 813. Rather, as a general matter, a stop is reasonable when an officer has probable cause to believe that a traffic violation has occurred. *Id.* at 810.

5

      lane, signaled a lane change, and moved into the right lane. Carmichael pulled the car over for possible violations of California Vehicle Code § 21658(a) (lane straddling) and California Vehicle Code § 23152(a) (driving under the influence).

*Id.* at 441.

      In its opinion, the Ninth Circuit discussed whether the initial stop of the defendant's vehicle was proper based on possible violations of California's prohibitions against lane straddling and driving under the influence. *Id.* at 443-47. With regard to the prohibition against lane straddling, the Ninth Circuit stated that "[w]hen interpreting [the statute prohibiting lane straddling], we are bound to follow the decisions of the California Supreme Court. If the California Supreme Court itself has not interpreted the meaning of this code provision, then we must predict how the court would interpret the code in light of California appellate court opinions, decisions from other jurisdictions, statutes, and treatises." *Id.* at 443 (citation omitted).

      The Ninth Circuit concluded there were no California Supreme Court decisions interpreting what was meant by the statute's requirement that a driver drive as nearly as practicable entirely within one lane.[3] *Id.* However, the court found that similar statutes in other states had been interpreted to mean that touching a lane line is not sufficient to constitute lane straddling. *Id.* at 444. The court also found that "[t]ouching a dividing line, even if a small portion of the body of the car veers into a neighboring lane, satisfies the statute's requirement that a driver drive as 'nearly as practical entirely within a single lane.'" *Id.* (emphasis omitted). Thus, based on this authority, the court concluded that "[i]t is reasonable that a driver with no cars abreast of him might veer slightly within his lane or over the lane line in the course of making a lane change to ensure that it safe to do so." *Id.* at 445. As such, the court held that there was no probable cause to stop the defendant for lane straddling. *Id.*

---

      [3] California's prohibition against lane straddling, Cal. Veh. Code § 21658(a), reads as follows: "Whenever any roadway has been divided into two or more clearly marked lanes for traffic in one direction, the following rules apply: (a) A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from the lane until such movement can be made with reasonable safety."

6

### 4. Considerations in the Present Case

As set forth in *United States v. Colin*, when interpreting Nevada's statute prohibiting failure to maintain a single traffic lane, this court is bound to follow the decisions of the Nevada Supreme Court. If the Nevada Supreme Court has not interpreted the meaning of the statute, then this court must predict how the Nevada Supreme Court would interpret the statute in light of decisions from other jurisdictions, statutes, and treatises. The Nevada Supreme Court has not interpreted Nevada's prohibition beyond noting that "the gravamen of a charge for violating NRS 484.305(1) is that the driver changed a direct course of travel without giving the proper signal." *Nevada v. Eighth Judicial Dist. Court*, 994 P.2d 692, 699 (Nev. 2000). However, in *United States v. Garcia*, 205 F.3d 1182 (9th Cir. 2000), the Ninth Circuit discussed this statute when deciding whether an officer had probable cause to stop a driver who drove in the following manner[4]:

> [The officer] saw the vehicle's left side tires cross into the number one lane and then cross back into the number two lane. A few hundred yards later, the driver activated the left turn signal and moved into the number one lane to pass a semi-truck that was in lane number two. As the vehicle passed the truck, [the officer] saw it swerve "over the center yellow line into the paved shoulder throwing dirt and debris up." The vehicle then "slightly jerked back into the number one lane" and continued to pass the truck.

*Id.* at 1184. The court concluded the driver's actions gave the officer probable cause to stop him. *Id.* at 1187. The court reasoned, "[The defendant] does not dispute that the vehicle was weaving within its lane or that it later crossed onto the shoulder of the highway. [The officer] had probable cause to pull the vehicle over based on its failure to maintain a single travel lane, in violation of Nev. Rev. Stat. § 484.305." *Id.* at 1187.

The undisputed facts developed at this court's evidentiary hearing compel this court to conclude that Tierney had probable cause to pull Defendant over. Unlike the defendants in *United States v. Sigmond-Ballesteros*, *United States v. Robert L.*, and *United States v. Colin*, Tierney had

---

[4] The defendant in *Garcia* also challenged Nevada's lane-straddling statute as unconstitutionally vague. *Id.* at 1184 n.1. The court rejected this argument, concluding "Nevada Revised Statute 484.305 clearly identifies the prohibited conduct, that is, failing to maintain a single travel lane . . . ." *Id.*

7

probable cause to believe Defendant was failing to maintain his traffic lane. Tierney testified that when he was about 500 feet away from Defendant's vehicle, Tierney saw it drift over the slow lane's fog line with its right-side tires. The tires went entirely over the fog line onto the shoulder, where they remained for two seconds. Defendant's vehicle then drifted back to the left and drove with its right-side tires on the fog line for another couple seconds.

Because Defendant undisputedly *crossed over* the fog line, as opposed to just touching it, Tierney had probable cause to believe Defendant was violating Nevada Revised Statutes section 484.305(1). Although the Nevada Supreme Court–or any other Nevada court–has not issued a opinion regarding what constitutes a failure to maintain a traffic lane, persuasive authority weighs in favor of finding that crossing over, as opposed to touching, a fog line constitutes such a failure. Tierney therefore had probable cause to stop Defendant.

**B. Scope of Defendant's Stop**

Defendant also argues that his seizure was unconstitutionally prolonged when Lewis asked him if he had a moment as Defendant was approaching his vehicle to leave the scene. The court disagrees.

A person is seized if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). This "reasonable person" standard presupposes an innocent person in the defendant's position. *Florida v. Bostick*, 501 U.S. 429, 438 (1991).

The uncontroverted facts developed at this court's suppression hearings revealed that Lewis told Defendant he was receiving a warning, gave Defendant his driving documents, said goodbye, and shook Defendant's hand. Defendant then started walking back to his vehicle, but before he entered the vehicle, Lewis asked Defendant if he had a moment. In response, Defendant walked back to Lewis. Lewis asked Defendant whether he had illegal drugs or a large amount of cash in his vehicle. Defendant responded that he did not have any drugs in his vehicle, but he did have about

8

$1000 cash.  Lewis then asked Defendant if the officers could search his vehicle.  Defendant nodded, said yes, and thereafter signed a written consent to search.

Under these circumstances, a reasonable, innocent person in defendant's position would have felt free to leave.  When Lewis asked Defendant if he had a moment, Lewis had already told Defendant that he would receive a warning, shook Defendant's hand, and told Defendant goodbye.  Short of telling Defendant he was free to leave, which the Supreme Court has held is not necessary to end a seizure, *see Ohio v. Robinette*, 519 U.S. 33, 36, 40 (1996), it is hard to imagine what more Lewis could have done to make clear that the traffic stop had concluded.[5]  Furthermore, the Fourth Circuit has found under remarkably similar facts that a defendant was no longer seized.  *See United States v. Meikle*, 407 F.3d 670, 671, 673 (4th Cir. 2005) (holding that a reasonable person would have felt free to leave when an officer completed the defendant's warning citation, returned the defendant's license and registration, shook the defendant's hand, and asked the defendant if he could talk to him again as the defendant was walking back toward his vehicle).  As such, Lewis did not prolong Defendant's seizure when he asked Defendant if he had a moment.

Moreover, even assuming Defendant's seizure continued when Lewis asked him if he had a moment, Defendant's argument that his seizure was unconstitutionally prolonged is foreclosed by *United States v. Turvin*, 517 F.3d 1097 (9th Cir. 2008).  In *Turvin*, an officer stopped a defendant for various traffic offenses.  *Id.* at 1098.  The officer later discovered through a fellow officer that a "rolling methamphetamine laboratory" had previously been found in the defendant's vehicle.  *Id.*  Upon learning this information, the officer stopped writing traffic citations, turned on his tape recorder, and approached the defendant, who was sitting in his vehicle.  *Id.*  The officer told the defendant that he knew about the rolling methamphetamine laboratory and asked the defendant if he

---

[5] Defendant's consent is also distinguishable from the consent obtained from a defendant in *United States v. Chavez-Valenzuela*, 268 F.3d 719 (9th Cir. 2001), *amended by United States v. Chavez-Venezuela*, 279 F.3d 1062 (9th Cir. 2002).  Unlike the present case, the officer in *Chavez-Venezuela* did not indicate the defendant would receive a warning or otherwise end the traffic stop before obtaining the defendant's consent to search his vehicle.

9

could search the vehicle. *Id.* at 1098-99. The defendant consented to a search, which revealed an illegal sawed-off shotgun and methamphetamine. *Id.* at 1099.

The defendant moved to dismiss the evidence on the basis that the officer unconstitutionally prolonged the traffic stop when he stopped the ticket writing process to ask him for consent to search his vehicle. After a district court granted the defendant's motion, the Ninth Circuit considered the following issue on appeal:

> [D]oes the fact that [the officer] paused his ticket-writing process to ask a few questions unrelated to the purpose of the traffic stop, thereby prolonging, for at least a few moments, the duration of that otherwise legal stop, turn the initially lawful stop into an unlawful detention? That is, based on the factual circumstances underlying this appeal, did [the officer's] brief pause unreasonably prolong the traffic stop and thus violate [the defendant's] Fourth Amendment right to be free from an unreasonable seizure?

*Id.* at 1099, 1101. The Ninth Circuit held that the officer's questioning was constitutional, framing its analysis by asking whether under the totality of the circumstances surrounding the stop, the officer's conduct was reasonable. *Id.* at 1101. In support of its conclusion the court found that (1) the brief pause in the ticket-writing process–which lasted about four minutes–was reasonable and (2) the duration of the stop until defendant consented to the search–which lasted fourteen minutes–was reasonable. *Id.* at 1101-02, 1103. The Ninth Circuit also stated that its analysis applied with particular force because the officer had probable cause to know of a traffic violation. *Id.* at 1103. In support of this proposition the court relied on the reasoning and result of the Seventh Circuit case *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) and quoted that opinion's statement that

> a driver does not ha[ve] a right to be released the instant the steps to check license, registration, and outstanding warrants, and to write a ticket, ha[ve] been completed. It is therefore not necessary to determine whether the officers' conduct added a minute or so to the minimum time in which these steps could have been accomplished. . . . What the Constitution requires is that the entire process remain reasonable. Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention.

*Id.* at 1103.

In the present case, while there was no testimony as to exactly how much time elapsed from when Lewis said goodbye until Defendant consented to a search, the court concludes the Government has shown Lewis and Tierney's conduct was reasonable. Lewis testified that after he told Defendant goodbye, Defendant was walking to his car when Lewis asked Defendant if he had a moment. After Defendant acknowledged Lewis, Lewis asked him several questions about whether he had contraband in his vehicle. Defendant responded that there were no drugs in his vehicle, but there was about $1000 cash. After this exchange, Lewis asked Defendant if he could search the vehicle to which Defendant nodded and said yes. In view of Lewis's uncontroverted testimony about the chain of events following his farewell to Defendant, the court concludes Defendant was present at the scene for a reasonable amount of time before he consented to a search of his vehicle.

Furthermore, the court concludes that length of the entire stop until Defendant consented to a search was reasonable. Tierney testified that about fifteen minutes elapsed from the time when he stopped Defendant until Lewis arrived. When Lewis arrived, Tierney was still running a records check, which is an expected part of a traffic stop. *See Berkemer v. McCarty*, 468 U.S. 420, 437 (1984). Upon Lewis's arrival, Tierney advised him of the reason for the stop and also told Lewis to give Defendant a warning and try to obtain his consent for a search. This discussion with Lewis was reasonable considering Tierney was having trouble communicating with Defendant, and Lewis could speak Spanish better than Tierney. After the discussion, Lewis told Defendant he would receive a warning, shook Defendant's hand, and told him goodbye. As stated above, Defendant was then present at the scene for a reasonable amount of time before he consented to a search. Thus, under the totality of the circumstances, the officers' conduct and the time elapsed before Defendant consented to a search was reasonable.

Finally, Lewis's additional questions after he told Defendant goodbye are afforded more latitude given that the officers had probable cause to believe Defendant violated Nevada Revised Statutes prohibition on failing to maintain a traffic lane, section 484.305(1). As articulated above,

the Ninth Circuit in *Turvin* stated that its analysis applied with particular force because the officer had probable cause to know of a traffic violation. The court based this proposition upon its agreement with the reasoning and result in *United States v. Childs*, 227 F.3d 947 (7th Cir. 2002). In *Childs*, two officers stopped a vehicle in which the defendant was riding as a passenger. *Id.* at 949. After approaching the vehicle, the officers discovered the defendant was not wearing his seatbelt, a violation of Illinois law. *Id.* One of the officers asked defendant if he had any marijuana and obtained his consent to a search, which revealed crack cocaine. *Id.* On appeal the defendant argued that the officers unconstitutionally prolonged his detention while he was being questioned. *Id.* at 953. The Seventh Circuit sitting en banc rejected Defendant's argument, reasoning that because the defendant could have been arrested after the officers had probable cause to believe he violated Illinois's seatbelt law, the officers did not need to release him as quickly as possible. *See id.* at 952-54. The court therefore concluded that it was "not necessary to determine whether the officers' conduct added a minute or so to the minimum time in which [the traffic stop] could have been accomplished. . . . What the Constitution requires is that the entire process remain reasonable. Questions that hold potential for detecting crime, yet create little or no inconvenience, do not turn reasonable detention into unreasonable detention." *Id.* at 953-54.

In the present case, the officers–like the officers in *Childs*–had probable cause to believe Defendant violated state law. The officers' belief therefore would have justified a full custodial arrest, *see Atwater v. Lago Vista*, 532 U.S. 318, 355 (2001), which would have delayed Defendant much longer than the brief period after Lewis told Defendant goodbye until Defendant consented to a vehicle search. Thus, in view of the Ninth Circuit's agreement with the Seventh Circuit's reasoning and result in *Childs*, the court concludes that the delay while Lewis obtained defendant's consent was well within constitutional limits.

**IV.   Conclusion**

Tierney had probable cause to believe Defendant violated Nevada's law against failing to

maintain a traffic lane. Defendant's initial traffic stop was therefore justified. Furthermore, the officers' contact with Defendant after Lewis told Defendant goodbye was consensual. Defendant therefore was not seized when Lewis obtained Defendant's consent to search his vehicle. In the alternative, even assuming Defendant was seized after Lewis told him goodbye, the period of time from Lewis's farewell to Defendant's consent was reasonable. As such, the evidence uncovered as a result of Defendant consent was not the result of an unconstitutional search.

IT IS THEREFORE ORDERED that Defendant's motion to suppress (#20) is DENIED.

IT IS SO ORDERED.

DATED this 29th day of May 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE